Virginia SMITH, Appellant,

v.

**PEOPLES LIFE INSURANCE COMPANY,**
a corporation, Appellee.

No. 3913.

District of Columbia Court of Appeals.

Argued June 27, 1966.

Decided Aug. 31, 1966.

Clement Theodore Cooper, Washington, D. C., for appellant.

Kent D. Thorup, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge:

Appellant sued to recover $2,500 as the beneficiary of an industrial accident policy written by appellee. The sole issue before the trial court was whether the insured (appellant's husband) died under circumstances entitling her to payment. The policy provided that the company would pay the principal sum to the designated beneficiary upon receipt of proof that the insured "sustained bodily injury solely through external, violent and accidental means, resulting directly and independently of all other causes [in his death]." At the close of all the evidence, the court found for appellee.

At the trial, appellant testified that her husband, a cab driver, was in excellent health and had taken a physical examination to renew his card a few months before the accident. She had never known him to seek medical attention for any reason, and as far as she knew he was not suffering from any type of gross hypertension. The insured's death and the fact that an accident occurred on the date involved were stipulated.

Appellee's case consisted of the testimony of the police officer who arrived on the scene minutes after the accident, and that of the doctor who supervised the autopsy of the insured. The officer stated that the insured's cab was traveling between five and ten miles per hour at the time of impact, and that it had to angle off to the right into the parking area to strike the other car. There were no visible marks on or about the

insured's person or in the cab that would indicate any contact between automobile and individual. The officer testified that he thought the insured to be suffering from a stroke and described him as being unable to speak, having difficulty in breathing and walking, and lacking in control and awareness.

The doctor testified that the hospital records revealed that the insured had blood pressure readings of 190 and 200, that there was blood in his spinal fluid and brain caused by a massive intercerebral hemorrhage, and that there was no indication of external trauma or violence. After testifying to certain indicia of hypertension disclosed by the autopsy, she concluded that it had caused the hemorrhage which resulted in the insured's death.

■ Appellant argues that she sustained her case by a preponderance of the evidence and that medical testimony was not required to establish her claim. The language of the policy put the burden on her to prove that the insured received a bodily injury which was sustained through external, violent and accidental means and which effected his death, directly and independently of all other causes.[1] The record reveals that the insured was involved in a minor accident and that he died of a cerebral hemorrhage within forty-eight hours. Totally lacking is any proof by appellant of the causation expressly required by the policy. Thus even if we assume arguendo that recovery could be had if the accident set in motion forces resulting in the hemorrhage, we can find no error in the trial court's decision. Appellant has not shown that the accident could have or did in fact cause the insured's death, nor that any injury resulted therefrom. She would have us hold that the factors of her husband's good health a few months before, and his death within forty-eight hours of the accident are sufficient for recovery, notwithstanding testimony indicating preexisting disease, the absence of trauma or violence, and that the accident may have been a direct result of the hemorrhage. This we are unable to do.

■ Our decision is in accord with the rule in a majority of jurisdictions that whether death is within the scope of a policy such as the one at bar, where both accident and disease are present, depends upon whether it is attributable to the accident or to the disease and upon the factor of proximate cause. See generally 29A Am.Jur. Insurance §§ 1212, 1213 (1960). In Freeman v. Mercantile Mut. Acc. Ass'n, 156 Mass. 351, 30 N.E. 1013, 1014, 17 L.R.A. 753 (1892), the court stated:

"[T]he law will not go further back in the line of causation than to find the active, efficient, procuring cause, of which the event under consideration is a natural and probable consequence, in view of the existing circumstances and conditions."

Applying this often-cited test to the case at bar, we find no showing that the "active, efficient, procuring cause" of the insured's death was sustained through "external, violent and accidental means."

The cases cited by appellant are inapposite, and hold generally that the issue of proximate cause is for the jury to determine.[2] The trial court was justified in ruling that death was caused by internal not external causes and therefore did not fall within the scope of the policy.

Affirmed.

1. Fairclough v. Fidelity & Casualty Co., 54 App.D.C. 286, 297 F. 681 (1924). See generally Annot. 144 A.L.R. 1416 (1943).

2. Equitable Life Assur. Soc. of United States v. Gratiot, 45 Wyo. 1, 14 P.2d 438, 82 A.L.R. 1397 (1932) (cause of accident is jury question; external cause of accident shown); Fairclough v. Fidelity & Casualty Co., supra, n. 1 (jury could find that even if vertigo had caused insured's fall, the fall was sole proximate cause of death); Patterson v. Ocean A. & G. Corporation, 25 App.D.C. 46 (1905); Guenther v. Metropolitan Railroad Co., 23 App.D.C. 493 (1904).