**In re PIPER AIRCRAFT CORPORATION,**
Debtor.

**Leroy LOPRESTI, Plaintiff,**

v.

**ROMEO CHARLIE, INC.,**
**et al., Defendants.**

Bankruptcy No. 91–31884–BKC–RAM.
Adv. No. 95–1695–BKC–RAM–A.

United States Bankruptcy Court,
S.D. Florida.

March 4, 1997.

Michael J. Ferrin, Bailey, Fishman, Freeman & Ferrin, West Palm Beach, FL, for Plaintiff.

Jonathan E. Perlman, Blum, Perlman, & Cherdack, John H. Schulte, Schulte & Bisbing, Miami, FL, for Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION FOR REMAND

ROBERT A. MARK, Bankruptcy Judge.

On April 10, 1996, the Court conducted a hearing on Defendants' Motion to Dismiss (the "Motion to Dismiss") and Plaintiff's Motion for Remand or, in the Alternative, Abstention (the "Motion for Remand"). At the conclusion of the hearing, the Court took the matter under advisement and invited the parties to submit supplemental memoranda. For the following reasons, the Court will deny the Motion to Dismiss and grant the Motion for Remand.

### FACTUAL BACKGROUND

Defendant, Romeo Charlie, Inc. ("RCI"), previously owned Piper Aircraft Corporation ("Debtor" or "Piper"). In 1988, RCI entered into an employment agreement with the plaintiff, Leroy Lopresti ("Plaintiff" or "Lopresti"), hiring Lopresti to provide services for Piper. In accordance with the agreement, RCI formed a subsidiary, Lopresti Piper Aircraft Engineering Company ("Lopresti Piper"). Defendant, Garrihy Aircraft Design Corp. ("Garrihy") is the successor of Lopresti Piper.

On July 1, 1991, Piper filed a petition for relief under Chapter 11 of the Bankruptcy Code. On November 13, 1991, Lopresti filed a proof of claim against Piper for unpaid wages, vacation pay and expense accounts. Lopresti also claimed that Piper was obligated to repay a loan Lopresti made to Lopresti Piper. Debtor objected to Lopresti's claims. Because of the nature of the dispute, the Court directed Lopresti to file an adversary complaint to assert his claims.

On December 5, 1994, Lopresti, together with other members of his family, filed an adversary complaint against Piper, Adversary No. 94-1216-BKC-RAM-A (the "Piper Adversary"). Lopresti alleged that Piper, as the alter ego of RCI and Lopresti Piper, was liable to Lopresti for unpaid wages ($140,384.60), unpaid expense accounts ($8,997.84), unpaid vacation pay ($16,771.15) and unpaid loans to Lopresti Piper ($13,577.70).

On May 30, 1995, Lopresti and Piper executed a Stipulation of Settlement Between Piper Aircraft Corporation and Curtis Lopresti, David Lopresti, James Lopresti, Margaret Lopresti, Roy Lopresti and Leroy Lopresti (the "Settlement Agreement") which granted Lopresti a $40,000 unsecured claim in full satisfaction of his claims against Piper. The Settlement Agreement explicitly stated that "nothing in this Stipulation shall be construed to constitute a release of any claims the Loprestis may have against [RCI]."

On June 9, 1995, Piper filed its Motion of Piper Aircraft Corporation for Approval of Stipulation of Settlement Between Debtor and Loprestis (the "Motion to Approve Settlement"). As stated in the motion, Lopresti agreed to dismiss the complaint against Piper *with prejudice* and to release Piper, and the Piper bankruptcy estate, from any further claims. In return, Piper agreed to allow Lopresti a $40,000 general unsecured claim. The Agreed Order Approving Settlement Agreement Between Debtor and Lopresti was entered on July 7, 1995.

The First Amended Joint Plan of Reorganization (the "Joint Plan") treated Lopresti's $40,000 general allowed unsecured claim. On July 11, 1995, the Court entered its Order Confirming the Joint Plan (the "Confirmation Order"). Lopresti did not appeal the Confirmation Order.

## PROCEDURAL BACKGROUND AND JURISDICTION

On June 27, 1995, Lopresti filed the instant complaint (the "Complaint") against RCI and Garrihy, f/k/a Lopresti Piper, in the Circuit Court, in and for Indian River County, Florida (the "State Court"). An amended complaint (the "Amended Complaint") was filed on October 20, 1995. The Amended Complaint seeks relief against RCI and Lopresti Piper for the same allegedly unpaid wages, unpaid expense accounts, unpaid vacation pay and unpaid loan at issue in the Piper Adversary.

On November 13, 1995, Defendants filed Defendants' Notice of Removal of Action Subject to Automatic Referral to Bankruptcy Court (the "Notice of Removal") removing the case from the State Court to the United States District Court. On November 20, 1995, the district court entered its Order of Reference to Bankruptcy Court referring the matter to this Court.[1]

The Motion to Dismiss and Motion for Remand were filed while this action was pending in the district court. Upon referral, Plaintiff urged this Court to treat the Motion for Remand as a threshold matter since, according to Plaintiff, this Court lacks subject matter jurisdiction to adjudicate his claims against non-debtor defendants. The Court disagreed finding that it had jurisdiction to hear the Motion to Dismiss since the Motion involves the res judicata effect of prior orders entered in the Piper bankruptcy case. In its January 29, 1996 Order Setting Hearing on Pending Motions and Deadlines for Responsive Pleadings, the Court set a briefing schedule on the pending motions. That Order also advised the parties that the Motion to Dismiss would be considered first

followed, if necessary, by consideration of the Motion for Remand.

## DISCUSSION

### A. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE DOCTRINE OF RES JUDICATA

██ The primary issue before the Court is simply stated: Did the settlement of Lopresti's claims against Piper in the Piper Adversary bar him, under the doctrine of res judicata, from prosecuting the same claims against RCI and Lopresti Piper? The Court concludes that it did not. This Complaint, against non-parties to the prior adversary proceeding, is not barred by res judicata since the record in the first action does not sufficiently establish that Piper was, in fact, the alter ego of RCI or Lopresti Piper. Moreover, one cannot ascertain that the Piper Adversary was dismissed based on a finding that RCI and Lopresti Piper were not directly liable.

The preclusive effect of a prior federal court judgment is a question of federal law. *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1501 (11th Cir.1990); *Hart v. Yamaha–Parts Distributors, Inc.*, 787 F.2d 1468, 1470 (11th Cir.1986). For res judicata to bar Lopresti's claims, the Defendants must establish the following: (1) there must be a prior final judgment on the merits; (2) the prior decision must be rendered by a court of competent jurisdiction; (3) there must be an identity of parties or their privies; and (4) the causes of action must be the same. *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir.1990), *cert. denied*, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990).

The first, second and fourth elements of res judicata are not contested. First, the dismissal of the adversary with prejudice, the Order Approving Settlement, and the Confirmation Order allowing Lopresti's general unsecured claim are final judgments. *See Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1501 (11th Cir.1990) (holding that the dismissal of a complaint

---

1. Procedurally, the defendants could have and should have filed their Notice of Removal in the bankruptcy court. Rule 87.2, Local Rules of the

United States District Court, Southern District of Florida.

with prejudice pursuant to a settlement was a final judgment on the merits for purposes of res judicata). Second, these prior decisions, the Order Approving Settlement and the Confirmation Order, were rendered by a court of competent jurisdiction. As to the fourth element, the causes of action were the same. The Piper Adversary sought recovery from the Debtor, as the alleged alter ego of RCI and Lopresti Piper, for the same acts of RCI and Lopresti Piper alleged in the Amended Complaint in this proceeding. The key issue in dispute is whether the third element of res judicata is satisfied in this case, namely whether there is a sufficient identity of parties to confer res judicata effect on the Order Approving Settlement or the Confirmation Order. As explained below, the Court concludes there is not.

### 1. The Record Does Not Sufficiently Support a Finding of Privity

To prevail on their Motion to Dismiss, the Defendants must prove that the Amended Complaint seeks relief against the identical parties or "privies" of those parties named in the original action. Since RCI and Lopresti Piper were not defendants in the Piper Adversary and did not submit themselves to this Court's jurisdiction in the original action, they were not "parties" in the first suit. *See Yamaha*, 787 F.2d at 1471 (stating that "[a] party is one who is both named as a party and subjected to the court's jurisdiction").

The Eleventh Circuit also discussed the "privity" element in *Yamaha. Id.* at 1472–1473. Like this case, *Yamaha* involved an attempt to invoke res judicata to bar a second suit against the alleged alter egos of the party dismissed with prejudice in the first suit. The Court acknowledged that res judicata would bar the second suit if and only if the alter ego doctrine applies: "Stockholders are not in privity with their corporations *unless* they are *found* to be alter egos." 787 F.2d at 1473 (emphasis added).[2]

In *Yamaha*, the Eleventh Circuit reversed and remanded the district court's finding of privity between the defendants in the two actions. The court found that the district court was clearly erroneous in finding privity where there was a lack of any factual basis in the record to support that determination. The court held that the defendant corporations "are not in privity merely because [the plaintiff] makes identical claims against them." 787 F.2d at 1473.

The record from the Piper Adversary fails to meet the *Yamaha* standard for finding privity between alleged alter egos. The mere fact that Lopresti alleged that Piper was the alter ego was not a determination that Piper was in fact the alter ego of RCI and Lopresti Piper. Certainly, the dismissal of the Piper Adversary did not establish the alter ego relationship. The dismissal could be interpreted to mean that Piper was indeed the alter ego, but Lopresti had no merit in his underlying claims against RCI and Lopresti Piper. But, it could just as readily be interpreted to mean that Lopresti had no standing to sue Piper as an alter ego or could not prove its alter ego status, both of which were alleged as affirmative defenses in the Piper Adversary. There are simply no facts in the record of the Piper Adversary to prove the interrelationship of the corporations. As in *Yamaha*, this barren record is insufficient to establish privity based on an alter ego relationship. 787 F.2d at 1472.[3]

### 2. The Final Judgment against Piper in the First Action Was Not Necessarily Rendered Upon a Ground Equally Applicable to the Defendants in this Action.

Defendants argue that res judicata applies in the principal/agent or alter ego situation no matter which party is sued first as long as the claims against both parties are the same. However, such a broad per se rule fails upon

---

2. As discussed below, the Defendants rely heavily on *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279 (5th Cir.1989). Interestingly, the Court in that case refused to *find* that a third "agent" was subject to res judicata because the court was not confident that based on the record, there was a sufficient agent/principal relationship between Exxon and him. 871 F.2d at 1289.

3. In *Yamaha*, the Eleventh Circuit remanded the case to the district court for further factual findings on the issue of whether an alter ego relationship existed. The Court finds that such a factual inquiry in this case is unnecessary since, as discussed in the following section, Defendants' res judicata argument fails as a matter of law.

a closer analysis of the relevant law, including the cases cited by the Defendants.

Defendants rely primarily on *Citibank N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498 (11th Cir.1990) to support their argument for a per se bar. In *Citibank*, Data Lease alleged that Citibank was vicariously liable for the actions of certain individual directors alleged to be Citibank's agents. Data Lease settled with the alleged agents, dismissing its claims against them with prejudice. The district court approved the settlement agreement. The agreement explicitly stated that it would have no effect on Data Lease's claims against Citibank.

Even though Data Lease expressly reserved its rights against Citibank, Citibank subsequently argued that the dismissal with prejudice of the alleged agents "extinguished Data Lease's claim of vicarious liability against Citibank, as a matter of law." 940 F.2d at 1500. The district court agreed and entered judgment for Citibank, and the judgment was affirmed on appeal. The Eleventh Circuit found that the dismissal with prejudice of claims exonerating the agents from liability barred a subsequent suit against Citibank, the principal, on the same cause of action. *Id.* at 1502-03. The court reasoned that the dismissal with prejudice of claims against the alleged agents had the same effect as would a final judgment finding that the alleged agents did nothing wrong. *Id.* at 1502. Simply put, the master (Citibank) could not be liable for conduct by its alleged agents since the dismissal adjudicated the conduct non-actionable.

The facts in this case are different. In *Citibank*, the agents were absolved in the prior suit (by the dismissal with prejudice), barring a later action against the alleged principal based on vicarious liability. Here, Piper, the party alleged to be vicariously liable, was absolved in the first action and the second case is against the parties Lopresti alleges are directly liable to him.

Defendants argue that under *Citibank's* holding, it does not matter whether the first suit is against the agent or the principal, citing to the following language in the Eleventh Circuit's opinion:

Most other federal circuits have concluded that employer-employee or principal agent relationships may ground a claim preclusion defense, **regardless which party to the relationship was first sued.**

*Id.* at 1502 (quoting from *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288 (5th Cir. 1989)) (emphasis added). So the question is narrowed further: For res judicata purposes, does it matter if the party absolved first is the party alleged to be vicariously liable rather than the party alleged to be directly liable? After further analysis of the cases cited in *Citibank*, this Court concludes that it does make a difference where, like here, the basis for vicarious liability was never established.

In their Supplemental Memorandum in Support of Motion to Dismiss, Defendants cite to *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279 (5th Cir.1989), to support their contention that res judicata applies even if the principal is sued first. Lubrizol sued Exxon for patent infringement in federal district court in New Jersey. Since most of the evidence in the case was confidential and sensitive in nature, the court issued a protective order restricting access to the information. Exxon entered some of Lubrizol's "restricted" information on computers at a facility in Texas. The facility was managed by an Exxon employee, Evans, and Evans was supervised by Lower, an Exxon attorney. Lubrizol requested sanctions against Exxon alleging that entering the confidential information in its computers violated the protective order. The parties resolved the dispute and executed a settlement agreement, dismissing the New Jersey case with prejudice.

Lubrizol then filed another suit against Evans, Lower, Exxon and other companies with access to the information entered on the computers, alleging common law fraud. Lubrizol complained that the affidavits of Evans and Lower filed in the New Jersey case contained false statements. The court dismissed the lawsuit for lack of subject matter jurisdiction and, alternatively, granted summary judgment in favor of all the defendants. The Court stated that the crux of Lubrizol's position was that "Exxon breached the [prior

court's] protective order, only because Evans and Lower—as Exxon employees acting in the scope of their duties—engaged in the exact conduct of which Lubrizol now complains." *Id.* at 1288. The court cited a number of cases that stand for the following legal proposition:

> Where a plaintiff has sued parties in serial litigation over the same transaction; where plaintiff chose the original forum and had the opportunity to raise all its claims relating to the disputed transaction; where there was a 'special relationship' between the defendants in each action, if not complete identity of parties; and where although the prior action was concluded, the plaintiff's later suit continued to seek essentially similar relief—the courts have denied the plaintiff a second bite of the apple.

*Id.* (citations omitted).

Thus, *Lubrizol* and *Citibank* arguably support a conclusion that res judicata works both ways, that is, it does not matter whether the principal or the agent is sued first. On closer analysis, however, Defendants' proposed rule is too broad. Instead, the case law and treatises, including the cases cited by the Defendants, require a showing that privity was established in the first suit in order to apply res judicata in the "principal first, agent second" scenario. Only if privity was established can you ascertain that a judgment in favor of the principal necessarily was based on a finding that the agent did no wrong. As shown below, privity is proven in the "principal first, agent second" scenario only where the first judgment for the principal was based upon a ground equally applicable to the agent.

The "same grounds" requirement is critical in the cases cited in *Citibank*. For example, the court cited to the following language from *Spector v. El Ranco,* 263 F.2d 143, 145 (9th Cir.1959) (emphasis added):

> Where, as here, the relations between the two parties are analogous to that of principal and agent, the rule is that a judgment in favor of either, in an action brought by a third party, **rendered upon a ground equally applicable to both,** is to be accepted as conclusive against the plaintiff's right of action against the other.

*Citibank* also cites with approval to the following language from *Lober v. Moore,* 417 F.2d 714, 717–718 (D.C.Cir.1969):

> "[I]t is the prevailing rule in the federal and the state courts that a judgment excusing the master or principal from liability **on the ground that the servant or agent was not at fault** forecloses a subsequent suit against the latter on the same claim .." 904 F.2d at 1502 (emphasis added).

A closer look at *Lober* emphasizes the importance of the "same grounds" element where the principal is sued first. In *Lober,* the plaintiff lost a jury trial against an employer for vicarious liability and later brought suit against the employee for negligently driving a taxi in which she was a passenger. 417 F.2d at 715–716. In the first action, the scope of employment issue was resolved in favor of the plaintiff as a matter of law. Thus, the only issue before the jury was whether the employee negligently drove the taxi. The jury found that the employer was not vicariously liable because the employee did not drive negligently.

The D.C.Circuit held that res judicata barred the plaintiff from bringing a second action against the employee. The court explicitly stated that its holding was dependant upon the fact that the jury verdict against the employer in the first action was based *solely* on the ground that the employee was not directly negligent. *Id.* at 716. The court went on to explain that res judicata would *not* apply if the first judgment was *not* based on the culpability of the agent:

> If it were possible that the employer's exoneration by the [first] judgment came in consequence of a finding that the employee acted beyond the scope of his employment, the judgment would *not* merit conclusiveness here.

*Id.* at 718, n. 31 (emphasis added). *See also Tamari v. Bache & Co. (Lebanon) S.A.L.,* 637 F.Supp. 1333, 1341–1342 (N.D.Ill.1986) (holding that res judicata does not apply where a court cannot determine whether the judgment for the principal in the first action was based on a defense that was personal to

the principal) (citing to Restatement (Second) of Judgments § 51 (1980)).

The scenario described in *Lober*, in which res judicata would not apply, parallels exactly the facts in this case. The prior dismissal against Piper, as alter ego/principal, was not necessarily based "on the ground that" RCI and Lopresti Piper, as Piper's agents, were not directly at fault. The dismissal with prejudice could also mean simply that Piper is not the alter ego of the defendants or that one of Piper's other defenses was meritorious.[4] Such a determination, while terminating the cause of action against Piper, is not "equally applicable" to RCI and Lopresti Piper, the parties Lopresti claims are directly liable. Simply stated:

> [W]here the decision in favor of an agent or principal in the first action was based on a defense that was personal to that party, such as a finding that the agent's acts were not within the scope of his agency, the judgment in the first does not preclude a second action against the party responsible for the conduct.

47 Am.Jur.2d § 687. This same rule applies here, where the basis of the decision in favor of Piper is unknown. *See Lober*, 417 F.2d at 718, n. 31; *Tamari*, 637 F.Supp. at 1341.

This Court's holding can be harmonized with *Citibank*. In *Citibank*, since the agents were absolved first, the identity of parties element was conclusively established by the allegations against the principal. This must be so since proof of the relationship was a necessary element of proving vicarious liability. Moreover, when the agent is absolved first, there is no basis to hold the principal liable if the only theory of liability is vicarious liability for conduct by the agents previously adjudged to be non-actionable. The converse is not true unless it can be determined that the principal won the first action on the grounds that the agents were not

liable. *See e.g.* Restatement (Second) of Judgments § 51 (1980); 47 Am.Jur.2d § 687.

■■] In sum, RCI and Lopresti Piper have failed to establish the "identity of parties" element necessary to invoke res judicata. Where, as here, the party alleged to be vicariously liable is sued first and the dismissal (1) does not adequately prove an alter ego relationship; and (2) is not definitively based on a ground equally applicable to both the vicariously liable and directly liable party, res judicata does not bar the second suit.

### 3. The Confirmation Order's Res Judicata Effect

■■] In the alternative, the defendants argue that the Confirmation Order, allowing Lopresti a general unsecured claim of $40,000 against Piper, operates to bar Lopresti from prosecuting his cause of action against RCI and Lopresti Piper under the theory of res judicata. In support of their argument, the defendants cite *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1552 (11th Cir.1990), *cert. denied*, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990) (holding that the confirmation order barred an adversary proceeding which was essentially a collateral attack of the confirmation order, where the claims raised in the adversary complaint were already raised, or could have been raised, and were overruled in the plaintiffs' objection to confirmation).

The defendants argue that *Justice Oaks* precludes Lopresti from filing a separate action against non-debtor defendants, who were not parties to the adversary proceeding, simply because Lopresti and the defendants were active parties in the bankruptcy and Lopresti had settled his claim against the Debtor. The Court rejects Defendants' argument. *Justice Oaks* has no application here. Lopresti is not attempting to collaterally attack the Confirmation Order. He simply seeks to pursue his claims against non-

---

4. All three of Piper's affirmative defenses in the Piper Adversary raised issues having nothing to do with the merit of Lopresti's underlying contractual claims against RCI and Lopresti Piper. The first affirmative defense challenged Lopresti's standing to bring an alter ego claim since he was a shareholder of Lopresti Piper. The second defense alleged that Lopresti could not bring an

alter-ego claim without first seeking relief against Lopresti Piper. Finally, Piper alleged in defense that it never assumed any obligations of Lopresti Piper and was not in privity directly with Lopresti. Answer, Affirmative Defenses and Counterclaim of Piper Aircraft Corporation to Adversary Complaint for Allowance of Claims, CP # 5 in the Piper Adversary, pp. 5, 6.

debtor third parties outside of the bankruptcy case.

### B. THIS PROCEEDING MUST BE REMANDED TO THE STATE COURT SINCE THIS COURT LACKS SUBJECT MATTER JURISDICTION

This proceeding was removed from the State Court under 28 U.S.C. § 1452(a). That section authorizes removal of claims related to bankruptcy cases if the "district court has jurisdiction of such claim or cause of action under § 1334 of [Title 28]." Thus, in order for this Court to have jurisdiction, it must find that the Amended Complaint filed in state court by Lopresti is "related to" Piper's Chapter 11 case. 28 U.S.C. § 1334(b). "Related to" has been defined as "whether the outcome of the [state court] proceeding could conceivably have an effect on the estate being administered in bankruptcy." *In re Lemco Gypsum, Inc.*, 910 F.2d 784 (11th Cir.1990), *citing, Pacor v. Higgins*, 743 F.2d 984 (3d Cir.1984).

As discussed earlier, this Court had "related to" jurisdiction to consider the Motion to Dismiss since it involved a determination of the res judicata effect of this Court's prior orders. Having concluded that the prior Piper bankruptcy orders do not bar plaintiff's claims, there is no further connection between the claims in this complaint and the Piper bankruptcy case that would confer jurisdiction in this Court. This is a dispute between third parties and does not involve the Debtor or the bankruptcy estate. Since the outcome of this lawsuit cannot "conceivably have an effect" on Piper's bankruptcy case, there is no "related to" jurisdiction and the case must be remanded.[5]

For the foregoing reasons, it is—

**ORDERED** as follows:

1. The Motion to Dismiss is denied.

2. The Motion for Remand is granted. This Court does not have "related to" jurisdiction under 28 U.S.C. § 1334(b).

5. This Court abstains from considering all arguments raised in the Motion to Dismiss other than the res judicata argument. Thus, denial of the Motion to Dismiss is without prejudice to the

3. Upon the finality of this Order, the Clerk shall transmit this file to the Circuit Court in and for Indian River County, Florida.

Defendants finding a renewed motion to dismiss in the State Court rearguing these other grounds for dismissal.